UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRY EUGENE SEARS,

    Plaintiff,

v.    Case No. 8:12-cv-288-T-33TGW

SERGEANT DAVID PRINCE;
CAPTAIN FELISHA DEXTER;
COLONEL VERNIA ROBERTS;
LIEUTENANT JEFFREY HART, et al.,

    Defendants.
_____

## **O R D E R**

This cause is before the court on Defendants Sergeant David Prince, Captain Felisha Dexter, Colonel Vernia Roberts, and Lieutenant Jeffrey Hart's motion for summary judgment (Doc. 143), and pro se Plaintiff Terry Eugene Sears' response to the motion. (Doc. 161).

A review of the record demonstrates that, for the following reasons, the Defendants' motion for summary judgment will be granted.

### **BACKGROUND**

On December 21, 2011, Sears, a prisoner incarcerated in the Florida Department of Corrections (DOC), filed a 42 U.S.C. § 1983 civil rights lawsuit against Defendants at Polk Correctional Institution (PCI), Polk City, Florida, where the alleged unconstitutional use of force

incident occurred on March 18, 2010.

On December 12, 2014, this Court dismissed all Defendants except the above-named Defendants and all claims except Sears' allegation that the use of force incident on March 18, 2010, states a claim for excessive use of force under the Eighth Amendment.

## BACKGROUND AND SEARS' ALLEGATIONS

Sears received a Disciplinary Report (DR) for battery or attempted battery on a correctional officer based on the March 18, 2010 incident. The DR, dated 3/18/2010, reads:

> ON 3/18/2010, AT ABOUT 11:15 AM, I, SGT. D. PRINCE SAW INMATE SEARS, TERRY DC# 083117 YELLING AT CPT. DEXTER ON THE SIDEWALK BETWEEN FOOD SERVICE AND MULTI-PURPOSE CPT. DEXTER WAS ORDERING SEARS TO "TURN AROUND AND CUFF UP" SEARS REFUSED. C/O S. PLOUGH AND C/O D. SMITH ATTEMPTED TO PLACE SEAR'S [sic] ARMS BEHIND HIS BACK. SEARS JERKED AWAY FROM THEM. I REMOVED MY CHEMICAL AGENT FROM MY BELT AND ORDERED SEARS TO PLACE HIS HANDS BEHIND HIS BACK FOR HAND CUFFING AND I ADVISED SEARS THAT I WOULD ADMINISTER CHEMICAL AGENTS IF HE DID NOT COMPLY. I PLACED MY RIGHT HAND ON HIS RIGHT WRIST AND ATTEMPTED TO DIRECT IT BEHIND HIS BACK FOR HAND CUFFING. SEARS REPLIED, "IF YOU SPRAY ME IT'S GOING TO GET PHYSICAL" AND SNATCHED AWAY FROM ME WHILE CLENCHING HIS FISTS. I ADMINISTERED AN APPROXIMATE ONE SECOND BURST OF CHEMICAL AGENT TO SEARS' FACIAL AREA. SEARS IMMEDIATELY CHARGED TOWARDS ME AND BEGAN STRIKING ME IN THE HEAD AND SHOULDER AREA WITH HIS FISTS. SEARS STRUCK ME ON BOTH SHOULDERS AND ON THE RIGHT SIDE OF MY HEAD. I WAS NOT INJURED BY THIS ATTACK. INMATE SEARS IS BEING CHARGED WITH 1-15 BATTERY OR ATTEMPTED BATTERY ON CORRECTIONAL OFFICER. SEARS IS HOUSED IN ADMINISTRATIVE CONFINEMENT PENDING THE DISPOSITION OF THIS REPORT.

(Exhibit D to Doc. 69).

Sears maintains that he was talking to Dexter when Prince sprayed him in the face with a chemical agent, without warning. (Doc. 1 at 18). Sears further claims that he was slammed to the ground, handcuffed and punched, elbowed and choked by DOC officials. (Id.). Sears alleges that Prince continued to spray him during this assault, which Sears approximates lasted sixteen

2

minutes. (Id.). Sears alleges that he was assisted to his feet and Prince sprayed him with a second can of chemical agent. (Id. at 19). Finally, Sears alleges that he was escorted to medical where he was physically assaulted by Prince. (Id.).

## UNDISPUTED FACTS

On March 18, 2010, Sears was housed in G-Dormitory which is located on the north end of the PCI compound. (Ex. 002, 010-011).[1] Dees [2] was the G-Dormitory Housing Officer for that shift. (Ex. 003-06). Dees was conducting a search of inmates as they returned to G-Dormitory and Dees ordered Sears to submit for search. (Id.)

An argument ensued between Dees and Sears when Sears refused to be searched. Sears left the G-Dormitory area and said he was going to discuss the incident with the Colonel. (Id.; Doc. 1 at 17). Dees radioed Dexter, who was making her rounds on the other side (south side) of the compound, about the incident. (Ex. 003-06). As Dexter made her way to G-Dormitory, she met Sears about half way in the compound, in an open roadway area with sidewalks and grassy grounds. The area is located approximately in front of the food service building and the canteen and just past the multi-purpose building. (Id.).

As Sears approached Dexter, Sears appeared agitated and was "flailing his arms and yelling loudly." (Id.). Dexter "told [Sears] that I would not talk to him unless he allowed me to cuff him, and he refused." (Id.). After Dexter made several attempts to gain Sears' compliance with her "cuff up" orders, Dexter called for assistance from several correctional officers in the area:

---

[1] All citations refer to the exhibits to Defendants' motion for summary judgment. (Doc. 143). The pages in the exhibits are numbered sequentially as "OAG (Office of Attorney General) + the Exhibit Number; for example OAG EX001." The Court cites to the exhibit number only; for example, Ex. 001.

[2] Dees is not a Defendant in this case.

3

Smith, Plough and Prince.[3] (Id.).

Looking north, Prince was moving "towards the food service" building with Smith on Dexter's right "from the canteen" building with Plough slightly behind them. Plough had "stepped outside of the multi purpose building to smoke." With the officers in place, Dexter "again instructed [Sears] to comply …." (Id.).

Sears refused to obey Smith's and Plough's order to place Sears in handcuffs, and Sears physically resisted their handcuffing him. (Ex. 007-009). Prince then removed his MK4 chemical spray canister from his belt and warned Sears to comply with the order to "cuff up." (Id.). Sears not only refused to comply with the lawful order to cuff up, but also warned Prince, "If you Gas me, it's going to get physical." (Id.). Prince again attempted to place Sears in handcuffs, but Sears "snatched away and again assumed a stance that indicated he intended to fight." (Id.).

After all of the above happenings, Prince applied a "small burst (1 second, or less) of Chemical agent Saber Red to his [Sears] facial area." (Id.; 003-006) The amount of chemical dispensed was 6.4 grams. (Ex. 062, 063). Upon review, this amount was found not to be excessive. (Ex. 046).

As a result of being chemically sprayed, Sears "immediately charged [Prince] while swinging his clenched fists. [Sears] repeatedly struck [Prince] in the area of [his] shoulders and head. (Ex. 007-009). Prince attempted to block the blows from Sears. Smith and Plough pulled Sears "off of" Prince. (Id.). Sears was subdued by Smith and Plough while Sears was under the effect of the chemical spray. (Id.).

In Dexter's words, Sears was "unruly, and chemical agents were applied by Sgt. Prince

---

[3] Plough and Smith are not defendants in this action.

to gain compliance." (Ex. 003-06). Sears was "combative and was placed on the ground, in the grass area, and hand cuffs were applied." (Id.). Once Sears was handcuffed, there was no further use of force and he was escorted to Administrative Confinement (AC) for decontamination in a shower and a post use-of-force medical examination. (Ex. 007-009, 002).

Dexter instructed another officer in the area, Sergeant Voorhess, "to get a video camera and report to medical for recording…." (Ex. 003-06). There was no videotaping of the spontaneous use-of-force event.[4]

Following his decontamination shower, Sears was not taken to medical, but was seen by the nurse in the AC building, for his post use-of-force medical examination. (Ex. 057). On the medical form, Nurse Cooper checked "Other" in the "Arrived via," block, indicating Sears was "seen in AC Confinement." (Id.) Sears' location is also reflected in the housing log where the log shows he was initially housed in AC. (Ex. 002).

Upon examination by Cooper, Sears complained only of pain at his "left front & shoulder, back of head (lower left side)." (Ex. 057). Cooper's medical examination found both areas to be "unremarkable" and Sears showed no problem rotating and moving his shoulder. (Ex. 058).

The post use-of-force medical examination revealed that Sears had a "small dime size abrasion with minimal bleeding" on his front left knee area and an "egg size soft lump" "with redness, ecchymosis" on his front right shin area. (Exs. 057, 058). The nurse medically determined that Sears' minimal injuries did not require notification of a physician nor further treatment. (Ex. 057). Sears was to remain in AC. Sears was "instructed to call medical staff if

---

[4] Sears' allegation that Dexter had a video camera in her possession is not correct. First, officials do not walk around with video cameras on their person; and second, Dexter is the officer in charge, and placing her in the role of filming an event removes her from her assigned command role.

needed." (Id.). Following his post use-of-force medical examination, Sears "was placed in a confinement cell and the incident ended." (Ex. 002).

Prince reported to medical where he was seen by Nurse Sher and he stated, I "was being hit by [Sears] -- punching my shoulders & bilateral upper arm area & right side of head" or "use of force by inmate." (Exs. 051, 052). Prince then "returned to [his] normal duties and had no further contact with [Sears]." (Ex. 007-009).

Smith and Plough were accidently hit by chemical overspray during the application of chemical spray by Prince. Plough also injured his left middle finger. (Ex. 053-56).

Later, while in AC, Sears declared a "psychological emergency" (Ex. 012), and was transferred to H Dormitory where he was seen by mental health personnel. Sears was then assigned to an "Isolation Management Room." (Ex. 013, 002). The Isolation Management Room status is also designated as self-harm observation status or SHOS. (Ex. 013).

While in SHOS, Sears was given a "shroud to cover [himself] … [and was] seen regularly by medical, mental health and security staff." (Ex. 002). Sears had a psychological evaluation; his condition did not warrant referral to a psychiatrist, and he was released from SHOS on March 25, 2010. (Ex. 013).

Due to the events of March 18, 2010, Sears was charged with (1) disobeying the orders of Officer Dees at G-Dormitory to submit to a search (Log # 580-100109); and (2) battery on Prince during the use-of-force event (Log # 580-100112). (Ex. 014, 027).

A disciplinary hearing (Log # 580-100109) was held April 1, 2010, for disobeying Dee's orders. Sears was found guilty of the charge and given thirty days in disciplinary confinement and sixty days of lost gain time credits. (Ex. 014).

A disciplinary hearing (Log # 580-100112) was held March 30, 2010, for battery and

assault on Prince during the use-of-force incident. Sears was found guilty and given sixty days in disciplinary confinement. (Ex. 026). The events of March 18, 2010, also generated a Report of Force Used and an Incident Report. (Ex. 064-075). All of the reports corroborate the Defendants' version of the incident that transpired on March 18, 2010.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed.R.Civ.P. 56(a). A genuine dispute is present if a reasonable jury could return a verdict in favor of the non-moving party. *See Allen v. Bd. of Public Educ. for Bibb Cnty.,* 495 F.3d 1306, 1313 (11th Cir. 2007). It is only when the moving party meets its initial burden that the burden shifts to the non-moving party to demonstrate there are "specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). In response, the non-moving party must show more than "a mere scintilla of evidence to defeat a [properly presented] motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004).

In determining whether summary judgment is proper, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (external citation omitted). It is impermissible for the court to make credibility determinations in reaching its decision. *See Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1266 n.1 (11th Cir. 2006).

## Cause of Action Under Title 42 U.S.C. § 1983

To state a valid cause of action under Title 42 U.S.C. § 1983, Plaintiff must allege

Defendants were: (1) acting under color of state law and (2) that they deprived him of a federally protected right, privilege, or immunity secured by the Constitution. *See U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001). Plaintiff must also establish an affirmative causal connection between the Defendants' conduct and the alleged constitutional deprivation. *See Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

**Excessive Use of Force**

This case concerns whether or not Defendants used excessive force against Sears. The core judicial inquiry when a prisoner alleges that prison officers used excessive force against the prisoner is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Wilson v. Gaddy,* 559 U.S. 34, 37 (2010) (*quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992)); *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). In the Eleventh Circuit, consideration of the following factors is used to determine whether the force applied was done maliciously and sadistically to cause harm: a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response. *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (*per curiam*); *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007). In making this determination, courts "give a wide range of deference to prison officials acting to preserve discipline and security, including decisions made at the scene of a disturbance." *Gilstrap*, 559 F.3d at 1217.

**The Need for the Application of Force**

The overwhelming evidence indicates Sears' actions created the need for the use-of-force about which he complains. On March 18, 2010, the action began when Sears admittedly refused Dees' lawful order to submit to a search upon Sears' return to G-Dormitory. Sears contends that Dees "tried to make conversation with [him] … [Sears] ignored him." (Doc. 1 at 17). Sears alleges that Dees "grabbed [his] left shoulder … [he] immediately snatched away and told Dees not to put his hands on me." (Id.). Sears then left the G-Dormitory area heading, as he states, to see the Colonel. (Id.). Sears thought Dees "was constantly harassing me…," and Sears regularly complained of, and wrote grievances against, Dees. (Id. at 16, 35).

Dees charged Sears with disobeying orders. The disciplinary team at the disciplinary hearing determined that Sears was guilty of disobeying Dees' orders and placed Sears in disciplinary confinement for thirty days with a gain time loss of sixty days.[5] The disciplinary hearing for this offense was case number 580-100109. (Ex. 083, Disciplinary Hearing Report, case number 580-100109).

Sergeant Cooper, in his witness statement, stated that he witnessed "C/O Dees give I/M Sears, Terry, a verbal order to cuff up. I/M Sears refused several orders and walked away." (Ex. 020). Both Dees and Cooper were interviewed by Sergeant Alexander and Sergeant Clark who had transcribed previously provided witness statements. (Ex. 018). Dees' witness statement was the basis of the disciplinary hearing findings.

A disciplinary hearing satisfies constitutional due process and "[Sears ] is not permitted to dispute the facts as stated in the DR. Sears cannot deny the conduct in the DR; and cannot

---

[5] Sears is serving a life sentence and any computation of gain time is an administrative function and has no real meaning.

imply that the DR was false by making allegations that explicitly contradict it."[6] (Doc. 101 at 12).

The record also establishes that Sears left the presence of Dees at G-Dormitory to meet Dexter and not to go to the Colonel's office as he alleges in his Complaint. The record plainly shows that Dexter met Sears contemporaneously with Dees' radio contact regarding the incident. (Ex. 003-006). The Colonel's office is located in an access restricted building and inmates cannot walk into the building.

With Dexter walking from the south end of the compound and Sears making his way from the north end, Dexter met Sears in the vicinity of the food service building in front of the canteen and near the multi-purpose building. (Ex. 003-006, 010-011). In her affidavit, Dexter states Sears approached her in an agitated fashion, waving his arms and yelling. This action occurred in the open area of the compound in front of the food service and other buildings with inmates and officers scattered throughout the area. It is not a closed area. (Ex. 010-011).

After Sears refused Dexter's order to "cuff up," Dexter called on Prince, who was walking toward the food service building; Smith, who was in front of the canteen; and Plough, who had stepped outside of the multi-purpose building, to join her for assistance. (Ex. 003-006).

Sears refused to comply with Dexter's additional orders and those of Smith and Plough. When Prince started to pull his MK4 Chemical Spray canister from his belt, Sears challenged him -- "if you Gas me, it's going to get physical." (Ex. 007-009). Sears refused to comply with

---

[6] In the Court's order partially granting Defendants' motion to dismiss (Doc. 101 at 12), the Court stated: "Sears claims that the DR he received for battery or attempted battery on a correctional officer on March 18, 2010, was "bogus." The DR was prepared by Prince; several officers corroborated Prince's version of the event. (Exhibit D to Doc. 69). Sears' claim is barred from consideration by this Court because Sears is challenging the veracity of a DR of which he was found guilty (Exhibit D to Doc. 69), after being provided due process at a disciplinary hearing. *See O'Bryant v. Finch*, 637 F.3d 1207, 1215-16 (11th Cir. 2011).

repeated orders and "indicated he wanted to fight." (Id.). As Smith and Plough sought to gain physical control of Sears, Prince chemically sprayed Sears with an approximate one-second burst into his facial area. (Id.). Sears simultaneously lunged at Prince and hit Prince several times with his fists. (Id.). In the commotion, Smith and Plough were hit with the chemical spray. Smith and Plough subdued Sears, and Sears was "directed to the grass covered ground" and hand cuffed. The use-of-force incident ceased at that point and no other action took place.

"Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). The Florida Administrative Code, Chapter 33-602.210(2), authorizes the use of non-deadly physical force when reasonably necessary to defend oneself or another against an inmate using unlawful force, or to overcome an inmate's physical resistance to a lawful command.

Sears came from the north end of the compound after arguing with Dees at G- Dormitory, and met Dexter in the open middle area of the compound. Sears was visibly agitated and was yelling at Dexter. Sears not only refused to follow Dexter's orders, he also refused to follow Smith's and Plough's orders. It was only after repeated warnings from Prince, and while Sears was in a physical confrontation with Smith and Plough, that Prince applied chemical spray to gain Sears' compliance. It was only after the application of the chemical spray, and with the physical efforts of Smith and Plough, that Sears was subdued on the grassy part of the compound and handcuffed.

That ended the use-of-force incident and Sears was escorted to AC for decontamination. Prince proceeded to medical and was cleared to return to work. (Ex. 051, 007-09). Dexter then saw Vorhees in the vicinity and instructed Vorhees to get a camera. Following Sears'

decontamination, Sears was retained in AC. Sears later declared a psychological emergency and was placed in an "Isolation Management Room" in H Dormitory for observation. (Ex. 013, 002).

A second disciplinary report was written against Sears for battering Prince. Other reports and documents were generated from the use-of-force incident: the Report of Force Used (Ex. 046-063) and an Incident Report for the force used. (Ex. 064-075). The battery charge was disciplinary case number 580-100112. A Disciplinary Hearing was later convened and Sears was found guilty of the charge; he was given sixty days in disciplinary confinement. (Ex. 026). Due to Sears' observation in isolation for his psychological emergency, that sentence was delayed until March 30, 2010. (Id).

Prince provided a detailed version of the above incident in his Disciplinary Report Worksheet, (Ex. 029), as did Dexter, Smith, and Plough. (Ex. 026-44).

The guilty findings are corroborated by the Report of Force Used with signed statements of Prince, Warden Edwards, the Institutional Inspector, and the Inspector General's review and approval. (Ex. 046). The report found that the amount of chemicals dispensed "does not appear to be excessive." (Id.). Only 6.4 grams were dispensed. (Ex. 062, 063). The same statements and positions by Defendants are reflected in the Incident Report of force used. (Ex. 064-75). The findings indicate Sears was argumentative, hostile, and wanted to fight. At no point did Sears follow the numerous lawful commands given by the officers present. The use of chemical spray was necessary to gain Sears' compliance.

**The Relationship Between the Need To Use Force and the Amount of Force Used**

Prince followed proper procedures and administered only one burst of approximately one second of chemical spray. This finding is consistent with the above statements and findings.

12

Moreover, only 6.4 grams of chemicals were used. (Ex. 062, 063).[7]

The compliance with prison regulations in administering force or restraint provides evidence that prison officials acted in good faith and not to inflict pain. *Campbell v. Sikes*, 169 F.3d 1353, 1376 (11th Cir. 1999). Nothing in the present record suggests that Defendants did not act with restraint or that they failed to follow procedures in the use of force. When forced by Sears to use force, the prison officers did so in a minimum manner to safely control and gain compliance of a belligerent Sears.

Sears was outwardly hostile, argumentative and was waving his arms while yelling at Dexter. Sears refused Dexter's orders, and even when confronted by three other officers, including Prince, Sears remained belligerent. Once Prince exhausted his warnings to Sears, Prince administered the chemical spray. Sears initially responded by attacking Prince. Sears' forceful action occurred even though Officers Smith and Plough were attempting to subdue him. It is for this reason that Smith and Plough received some exposure to the application of chemical spray. (See Ex. 053, Smith; and Ex. 055, Plough.) Contrary to Sears' allegations, Dexter, as the officer in charge at the scene, maintained her command and control with necessary separation from the physical event, and she was not exposed to the chemical spray.

The single application of chemical spray, along with the physical efforts of Smith and Plough brought Sears into compliance. No other force was used or needed. The type and amount of force bears a reasonable relation to the stated facts, statements, reports and findings made by all corrections officers and medical personnel. The amount of force used was the minimum

---

[7]Although Sears, in his response to Defendants' motion for summary judgment, contends that chemical spray from another canister was used, he provides nothing except his own statement to support this allegation.

force necessary to establish control over an uncooperative, hostile and agitated inmate.

## The Extent of Sears' Injuries

The lack of serious injury is relevant for this analysis. In determining whether the amount of force used against an inmate was de minimis, a court may consider the extent of the injuries suffered by the inmate. *Skrtich v. Thornton*, 280 F.3d at 1302. The extent of injuries does not control the Court's findings because the Court ultimately decides an excessive force claim "based on the nature of the force rather than the extent of the injury." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

In this instance, following the use-of-force incident, Sears only complained of pain to his "left front & shoulder, back of head (lower left side)." (Ex. 057). Nurse Cooper's post use-of-force examination showed that both areas appeared "unremarkable" and Sears was able to rotate his shoulder with no problems. (Id.). Sears did have a "small dime size abrasion with minimal bleeding" on his front left knee area and an "egg size soft lump with redness, ecchymosis"[8] on his front right shin area. (Exs. 057-058). A physician's examination was not required. Sears was released by medical to "remain in AC confinement" and "instructed [ ] to call medical staff if needed." (Ex. 057). Following his post use-of-force medical examination, Sears "was placed in a confinement cell and the incident ended." (Ex. 003-006).

Sears' complaint of alleged abuse and injuries are not supported by the injuries recorded and complained of in his post use-of-force medical examination. Notably, once Sears declared his subsequent psychological emergency, he was transferred to a more controlled environment and placed in an individual cell for direct observation. While the use and amount of force is

---

[8] *Ecchymosis* is a discoloration of the skin resulting from bleeding underneath, typically caused by bruising.

always critical, as presented in this case, the minimal injuries sustained by Sears indicate the lack of any attempt, by any individual, to "maliciously and sadistically [ ] cause harm." *Wilkins*, 559 U.S. at 37. Thus, the minimum nature of the injuries sustained by Sears in the use-of-force incident that occurred in an open field with three correctional officers, demonstrates the professional actions by those officers to minimize the harm that could have resulted when confronting a hostile inmate.

**The Threat Reasonably Perceived by Officials on the Basis of Facts Known to Them**

Courts are required to "examine the facts as reasonably perceived by [Defendants] on the basis of the facts known to [them] at the time." *Whitley v. Albers*, 475 U.S. 312, 321 (1986). It is evident from the numerous statements, reports and disciplinary hearings that Sears was the aggressor on March 18, 2010. Sears not only refused the officers' legal orders, but also taunted them by telling them what the officers could or could not do. When ultimately confronted by Prince regarding the application of chemical spray, Sears openly dared him that it "was going to get physical." The officers correctly perceived Sears as a threat to the safe operation and order of the institution. The incident occurred in the open compound in front of food service and other buildings with inmate population in the area. All actions taken by the officers, as reflected in the reports and statements, were proper and reasonable with regard to the perceived threat presented by a hostile and agitated inmate seeking to start a fight.

**The Efforts Made To Temper the Severity of the Force**

Sears had numerous attempts to respond to the officers' lawful orders prior to escalating the incident. Dees notified Dexter that Sears left G-Dormitory and was looking for her. Dexter ordered Sears to submit for cuffing. Only after Sears continued to refuse Dexter's orders did

15

Dexter seek nearby officers for assistance. Prince gave numerous warnings to Sears, and finally told Sears to comply or Prince would administer chemical agents. These actions failed to gain compliance from Sears, who was verbally challenging the orders and wanted to fight. The event occurred in open grounds at a time when inmates were allowed to transit the compound. It took only one application of chemical spray (6.4 grams), with Smith and Plough physically directing Sears to the grassy area of the compound, to control the situation. Thus, the efforts used against Sears were not only reasonable, but also restrained, given the numerous verbal and physical challenges issued by Sears.

### Additional Comments

Officers Smith and Plough are not parties to this action but their actions and any matter that may stem from them are covered by the same arguments and supporting documents in the analysis of the use-of-force event concerning Prince. This is so because all of actions alleged by Sears arise from the same event whether discussing the actions of Prince and Smith or Plough.

Second, it is evident that the use-of-force incident was a "spontaneous" event. By the very nature of spontaneous, the event is required to be videotaped. (Doc. 1 at 38). Sears' contentions that Dexter tours the compound with a video camera in hand is a conclusory statement. Dexter instructed Officer Voorhees to secure a camera after the use-of-force event had concluded. The obvious reason for the timing of that instruction is apparent given the nature of the event. (Ex. 003-006; Doc. 1 at 38 (stating "[t]he video did begin according to procedure.").

Given the above, Defendants, by any of their actions or omissions did not use excessive force on Sears. The force used was proper and reasonable and used to ensure proper order and safety of the institution and the persons present.

### Failure To Intervene

It is clear "prison officials have a duty … to protect prisoners from violence …." *Farmer v. Brennan.* 511 U.S. 825, 833 (1994). A violation of the Eighth Amendment occurs when a prison official acts with deliberate indifference to a substantial risk of harm to an inmate. *Farmer*, 511 U.S. at 828. To establish deliberate indifference, the defendant must first be aware of specific facts from which an inference can be drawn that a substantial risk of serious harm exists, and second, that the defendant drew that inference. *Purcell v. Toombs Cnty., Ga.*, 400 F. 3d 1313, 1319-20 (11th Cir. 2005). The specific facts must subjectively show that a defendant was aware of a "particularized threat or fear felt by [the Plaintiff]." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003). However, just because a defendant failed to alleviate a significant risk that he should have perceived, but did not, "while no cause for commendation, cannot be condemned as the infliction of punishment under the Court's cases," and thus, is not a Constitutional violation. *Farmer*, 511 U.S. at 838. Additionally, "[m]erely negligent failure to protect" an inmate from an attack is a violation of the Constitution. *Carter*, 352 F.3d at 1350.

Finally, the constitutional violation must be shown to have caused the injury, *Cottone v. Jenne*, 326 F.3d 1352, 1359 (11th Cir. 2003) (citation omitted); and there must be some realistic opportunity for a defendant to respond to prevent the illegal conduct. *See Ensley v. Soper*, 142 F.3d 1402, 1407-08 (11th Cir. 1998).

If a court finds a constitutional violation based on excessive use of force, "an officer who [was] present at the scene and who fail[ed] to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Skrtich v. Thornton*, 280 F.3d at 1302. "This liability, however, only arises when the officer is in a position to intervene and fails to do so." *Priester v. City of Riviera Beach*, Fla., 208 F.3d 919, 924 (11th Cir. 2000) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)). A defendant must be

aware of the "particularized threat or fear …." *Purcell v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1350 (11th Cir. 2005).

Dexter was the only official physically present at the scene during the use of force. Sears attempts to implicate Hart and Roberts, but it is clear that their observing from the "corridors leading to the visiting park," (Doc. 1 at 19) during the spontaneous use of force incident failed to take into consideration the lack of opportunity for Hart and Roberts to respond. The "corridors leading to the visiting park," as alleged by Sears, describes an area located away from, and not in the direct vicinity of, where the use-of-force event occurred. The map of Polk Correctional Institution (Ex. 010-011) indicates that the Visitor's Park is located behind the Canteen and the multi-purpose building, and thus, was some distance away from the incident.

Sears' conclusory allegations directed at Hart and Roberts indicate Sears knew they were not present at the use-of-force incident. "[He] observed Colonel V. Roberts and Lieutenant J. Hart watching this incident from the corridors leading to the visiting park." (Doc. 1 at 19). Hart and Roberts were in no position to intervene even if one assumed that an excessive use-of-force incident occurred. Moreover, the incident was dynamic and spontaneous and officers were present on the scene making instant judgments to control the situation.

In addition, the record documents show Sears was first taken to AC for a post use-of-force decontamination. The nurses document their post use-of-force examination with Sears at that location. Sears was never taken to the medical building, which is also evident by Prince's medical examination being conducted in the medical building, not near Sears. Prince also states he had no further interaction with Sears after the use-of-force event. This comports with normal operating protocol, which is to separate the inmate and the correction individuals involved in the use-of-force incident.

18

Defendants used the minimal amount of force necessary. Hart and Roberts were in no position to intervene, and actions at the site were so dynamic and spontaneous, no one had an opportunity to intervene.

Accordingly, the Court orders:

That Defendants' motion for summary judgment (Doc. 143) is granted. The Clerk is directed to enter judgment for Defendants and to close this case.

ORDERED at Tampa, Florida, on October 30, 2015.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Terry Eugene Sears