[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15080
_____

D.C. Docket No. 8:12-cv-00288-VMC-TGW

TERRY EUGENE SEARS,

Plaintiff-Appellant,

versus

VERNIA ROBERTS,
F. DEXTER,
DAVID PRINCE,
JEFFREY HART,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 24, 2019)

Before ED CARNES, Chief Judge, MARTIN, and ANDERSON, Circuit Judges.

ED CARNES, Chief Judge:

Terry Eugene Sears is a Florida inmate who claims that three correctional officers physically assaulted him and that one of them sprayed a chemical agent on him for 16 minutes after he was handcuffed and compliant.  He also claims that three supervisory officers watched the attack without doing anything to intervene.  This is Sears' appeal from the district court's grant of summary judgment to the correctional officers on his 42 U.S.C. § 1983 excessive force and deliberate indifference claims.  The district court's misreading of our decision in O'Bryant v. Finch, 637 F.3d 1207 (11th Cir. 2011), led it to limit the evidence from Sears that it considered and to credit the defendants' version of events over Sears' sworn allegations.  We vacate the judgment and remand for further proceedings.

I.

This appeal arises from events that occurred at the Polk Correctional Institution in Polk City, Florida.  Because of the procedural posture of the case, we view all the evidence in the light most favorable to Sears and will assume that the facts he alleged in his verified complaint, sworn response, and affidavit are true.  See Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012).

A.

On the morning of March 18, 2010, Sears was inside his prison dormitory when he was approached by Robert Dees, a correctional officer.  Sears ignored

2

Dees' attempt to make conversation and refused his order to submit to a pat-down search.  As Sears started to leave the dormitory, Dees reached out and grabbed him by the shoulder.  Sears "snatched away" and told Dees not to touch him.  Dees again grabbed Sears and verbally threatened him, letting go only when another officer intervened.

Once free from Dees' grip, Sears left the dormitory and went to Colonel Vernia Roberts' office to complain about Dees.  When Roberts refused to see him because he didn't have a pass, Sears headed outside to talk to Captain Felishia Dexter, who had just exited another dormitory.  While Sears was telling her about what Dees had done, Officers Dwight Smith and Steven Plough approached and said that they had received a radio call from Dees about Sears.  Sears told them that Dees was just retaliating against him.

Smith and Plough tried to handcuff Sears, but Sears resisted and, in his words, "refused to allow myself to be handcuffed."  At this point, Sergeant David Prince arrived on scene and began spraying Sears in the face with a chemical agent.  Then Smith and Plough "slammed" Sears to the ground and handcuffed his hands behind his back.  While Sears was restrained in that way, Smith began punching him in the back of his head and on the side of his face, and Plough grabbed Sears around the neck and choked him.  Sears cried out that he couldn't

breathe.  Through it all Prince kept spraying Sears in the face with the chemical
agent.

While Sears was still lying on the ground handcuffed, Smith stood on Sears'
right leg, shackled his ankles, and repeatedly pushed his face into the dirt.  Plough
then punched Sears several times in the ribs and kicked him in the back.  Finally,
Smith and Plough lifted Sears to his feet, and Prince began spraying him in the
face with a second canister of chemical agent.  Sears swears that the whole
physical altercation lasted for about 16 minutes.  He also swears that during the
entire time Dexter, Roberts, and Lieutenant Jeffrey Hart watched and did nothing
to help.

After the correctional officers had finished spraying and hitting Sears,
Plough and Smith escorted him to the medical building, and Roberts and Hart
followed.  Prince unlocked the rear door of the building and turned to Sears and
sucker-punched him in the face.  Sears fell to the ground and nearly lost
consciousness.  Prince continued to assault Sears while he was on the ground,
kicking him in the buttocks and stepping on his legs.  Smith then slapped Sears
twice in the face, and then asked if he was alright.  Sears cried out for help from
Roberts, and he then attempted to shield himself from further blows by hiding his
face in his hands.

When the assault finally ended, Sears was sent to the showers to wash off the chemical spray.  As a result of the beating, he was left with a black-eye, blurred vision, blisters and burning sensations on his face, a busted lip, knots on his head and right knee, swelling in his wrists, ankles, and face, pain in his ribcage and abdomen, skinned knees, a broken dental plate, and many scrapes and bruises. Later that same day, he reported that he was having a "psychological emergency" and threatened to commit suicide.  He was placed in an isolation cell for a week.

B.

After the altercation, Prince and Dees filed prison disciplinary reports against Sears.  Dees charged Sears with disobeying an order by refusing to submit to being handcuffed, and Prince charged him with battery or attempted battery of a correctional officer.  Prince stated in his disciplinary report that Sears had refused to comply with repeated orders to submit to being handcuffed and that when Sears "snatched away" from his grip, Prince had "administered an approximate one second burst of chemical agent to Sears' facial area."  Prince also reported that once he did that, Sears "charged towards [him] and began striking [him] in the head and shoulder area with his fists" before the other officers subdued Sears and got him handcuffed and shackled.

Representing himself in the disciplinary hearings, Sears was found guilty by both disciplinary panels.  He received 30 days of disciplinary confinement for

disobeying orders and 60 days of confinement for the attempted battery.  He was

also docked 60 days of gain time, though this had no practical effect because of the

sentence he was serving.  Sears unsuccessfully appealed both sanctions to the

prison warden.

C.

Sears filed this action under 42 U.S.C. § 1983 in December 2011.  He

claimed that Prince had used excessive force against him in violation of the Eighth

Amendment, and that Roberts, Dexter, and Hart had been deliberately indifferent

to a substantial risk of serious harm when they watched the assault without

intervening, also in violation of the Eighth Amendment.[1]  The district court

initially denied the defendants' motion to dismiss these claims because it found

that Sears' allegations, taken as true, were sufficient to establish constitutional

violations.  But the court later granted the defendants' motion for summary

judgment, which is the order now on appeal.

In its summary judgment order, the district court reasoned that because the

prison disciplinary panel had found Sears guilty of battery or attempted battery

against Prince, and because that hearing satisfied due process, Sears could not

challenge the panel's factual findings in this lawsuit.  The court wrote: "Sears is

---

[1]  Sears also named Smith and Plough as defendants in his excessive force claim, but they were never properly served, and the district court stated in its summary judgment order that they were no longer defendants in this action.  Sears does not contest that ruling on appeal.

not permitted to dispute the facts as stated in [Prince's disciplinary report]. Sears cannot deny the conduct in the [disciplinary report]; and cannot imply that the [disciplinary report] was false by making allegations that explicitly contradict it." The court also drew solely from the summary judgment exhibits submitted by the officers when it described in its summary judgment order what the "undisputed facts" of the case were.[2]   As a result, the district court found that Prince's "single application of chemical spray, along with the physical efforts of Smith and Plough[,] brought Sears into compliance," and that "[n]o other force was used or needed." Based on those findings, which it treated as "undisputed" facts, the district court granted summary judgment to all of the defendants. This is Sears' appeal.

## II.

We review <u>de novo</u> the district court's grant of summary judgment, considering all of the evidence in the light most favorable to Sears as the non-moving party. <u>See Hamilton</u>, 680 F.3d at 1318. Summary judgment is proper "if

---

[2] Those exhibits included:  affidavits by Dexter and Prince; reports of force by Prince, Smith, and Plough; incident reports by Dexter, Prince, Smith, Plough, and Dees; Sears' disciplinary hearing reports, charges, and witness statements; incident reports by the officer who videotaped Sears' decontamination process and the nurse who examined the officers and Sears; medical reports by the prison nurse of her examinations of Prince, Smith, Plough, and Sears; Sears' written declaration of a psychological emergency; a use of force checklist and risk assessment for use of chemical restraint agents; a chemical agent accountability log showing the weight of Prince's canister before and after the incident; and a chemical agent accountability log showing signatures of the officers who checked out and then returned canisters.

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).

III.

Under the Eighth Amendment, force is deemed legitimate in a custodial setting if it is "applied in a good-faith effort to maintain or restore discipline" and not "maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 999 (1992). In determining whether force was used "maliciously and sadistically," we consider: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury inflicted upon the prisoner"; (4) "the extent of the threat to the safety of staff and inmates"; and (5) "any efforts made to temper the severity of a forceful response." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (quotation marks omitted). "Not only that, but we must also give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." Id. (quotation marks and alteration omitted). The focus of our Eighth Amendment

8

inquiry is on the nature of the force applied, not on the extent of the injury inflicted.  Wilkins v. Gaddy, 559 U.S. 34, 37–38, 130 S. Ct. 1175, 1178–79 (2010). Additionally, "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002).

In granting summary judgment to the correctional officers, the district court stated, but failed to apply, the appropriate standard under Federal Rule of Civil Procedure 56.  Instead of viewing the evidence in the light most favorable to Sears, the court accepted as true the correctional officers' version of events, relying exclusively on the facts set forth in their affidavits and in the prison disciplinary reports, prison medical records, and other prison records the officers submitted. The court barely mentioned Sears' version of events.  When it did, it was usually to reject his statements as "not correct," as refuted by the record evidence submitted by the correctional officers, or as otherwise insufficient because the only source of them was Sears.

That was error.  Sears' statements in his verified complaint, sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response should have been treated as testimony by the district court.  See United States v. Stein, 881 F.3d 853, 857 (11th Cir. 2018) (en banc) ("[O]ur cases

correctly explain that a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment."); see id. at 856–57 (explaining that Rule 56(c) "allows a nonmoving party to dispute a material fact through an affidavit"); Barker v. Norman, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves as the equivalent of an affidavit for purposes of summary judgment).

It appears from the district court's order that it may have mistakenly relied on our decision in O'Bryant v. Finch, 637 F.3d 1207 (11th Cir. 2011), to exclude Sears' statements from consideration, or it may have viewed the evidence submitted by the officers as establishing the kind of record that no reasonable jury could disbelieve regardless of sworn statements to the contrary.  Or maybe both. Regardless, the district court erred in not accepting Sears' version of events as true for purposes of summary judgment.

### A.

In O'Bryant, an inmate filed a First Amendment retaliation claim under 42 U.S.C. § 1983 against two correctional officers who had submitted prison disciplinary reports against him.  Id. at 1209.  The inmate alleged that the reports were false, that he had not violated any rules, and that the officers filed the reports to retaliate against him for having filed grievances against them.  Id. at 1209, 1211. The district court granted the officers' motion for summary judgment, and we

affirmed.  Id. at 1212, 1220.  The problem for the inmate, as we saw it, was that the prison's disciplinary panels had already found him guilty of the rule infractions charged in the reports that he claimed were retaliatory.  Id. at 1215–16.  As a result, his federal claim was based on a factual finding that conflicted with the disciplinary panel's decision.  It could not both be true that (1) the reports against him were false and retaliatory (as his federal claim alleged), and (2) those same reports were true and not retaliatory (as the disciplinary panel concluded).

We held that "[i]f a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report."  Id. at 1215.  "To find otherwise," we explained, "would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction after having filed a grievance."  Id. at 1216 (emphasis omitted).

Sears' situation does not fall within the O'Bryant rule.  Unlike the plaintiff in that case, Sears does not challenge the disciplinary panel's finding that he violated a prison rule, nor does the success of his Eighth Amendment claims depend on a finding that the disciplinary panel's decision was wrong.  As we have explained in a different context:  "A prisoner may be punished for battery on a

prison guard, and that prison guard may be held liable for using excessive force on the prisoner in subduing him; both may be true." Dixon v. Hodges, 887 F.3d 1235, 1238 (11th Cir. 2018). Here the prison disciplinary panel decided only that Sears committed battery against Prince. The panel did not make any factual findings about what the officers did to Sears after that.

Whether Prince sprayed Sears with a chemical agent just once or more than that, whether the officers beat Sears after placing him in handcuffs and leg shackles, whether Prince sucker-punched Sears in the face when he arrived at the medical building, are factual questions that were not essential to the disciplinary panel's decision. They were not decided by it. The district court erred to the extent that it interpreted O'Bryant as precluding it from considering under the traditional summary judgment standard Sears' sworn factual allegations about the physical abuse he suffered.[3]

## B.

The correctional officers concede that O'Bryant does not limit the evidence the district court could consider on Sears' behalf. But they argue that the district court properly granted summary judgment in their favor because Sears offered

---

[3]  There may be other reasons a disciplinary panel's factfindings preclude a § 1983 excessive force claim, but because the defendants have not argued any other reason, we will not hypothesize about them. Cf. Peterson v. Johnson, 714 F.3d 905, 906, 917–18 (6th Cir. 2013) (applying collateral estoppel to bar inmate's § 1983 excessive force claim against a correctional officer where a prison disciplinary panel had found that the inmate started the fight, which defeated the particular federal claim that he had pleaded).

nothing more "than continued argument" relying "on his sworn statements to carry his summary judgment burden."  They acknowledge that if they "had submitted only continued argument with affidavits, the situation of 'dueling affidavits' c[ould] certainly be present."  They contend, however, that because they "did not rest on affidavits" but also submitted an "overwhelming amount of documentary evidence," Sears could not rest on his sworn affidavit, sworn response, and verified complaint to defeat all of the  evidence they produced.  They are mistaken.

The question on summary judgment is not about which side has offered the most evidence.  Instead, that question is simply whether there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.  While a plaintiff "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," id. at 248, 106 S. Ct. at 2510 (quotation marks and alterations omitted), we have long recognized that "[c]ourts routinely and properly deny summary judgment on the basis of a party's sworn testimony," Price v. Time, Inc., 416 F.3d 1327, 1345 (11th Cir. 2005).

That Sears' evidence consists mainly of his own testimony in his verified complaint, sworn response, and sworn affidavit does not preclude a finding that a genuine dispute of material fact exists.  "As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly

contradicted by the record, blatantly inconsistent, or incredible as a matter of law,
meaning that it relates to facts that could not have possibly been observed or events
that are contrary to the laws of nature." Feliciano v. City of Miami Beach, 707
F.3d 1244, 1253 (11th Cir. 2013). Sears' statements are none of that. His
statements contain "non-conclusory descriptions of specific, discrete facts of the
who, what, when, and where variety." Id. For instance, Sears swears that on
March 18, 2010, Prince sprayed him multiple times with two different canisters of
chemical spray; that Prince and the other correctional officers physically assaulted
him while he was handcuffed, shackled, and lying face down on the ground; and
that he saw Dexter, Roberts, and Hart close enough to the incident that they could
have intervened but didn't. Those statements directly contradict the correctional
officers' testimony that they used only enough force to bring Sears into
compliance. That presents us with "a classic swearing match, which is the stuff of
which jury trials are made." Id.

The correctional officers believe that their reliance on "documentary and
medical evidence" makes this case fit within the "blatantly contradicted by the
record" exception of Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769 (2007). In that
case the Supreme Court held that "[w]hen opposing parties tell two different
stories, one of which is blatantly contradicted by the record, so that no reasonable

14

jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id. at 380, 127 S. Ct. at 1776.

But there's a big difference between the record evidence presented in Scott and the evidence proffered here. In Scott, the record evidence that blatantly contradicted the plaintiff's version of events was a videotape of the car chase at issue. Id. at 378–79, 127 S. Ct. at 1775. Here, the officers' documentary evidence consists mainly of various forms of their own testimony: affidavits by Dexter and Prince, disciplinary reports by Prince and Dees, reports of force and incident reports by Prince, Smith, and Plough. Those reports just pit the correctional officers' word against Sears' word. That is different from Scott where a videotape of the incident definitively established what happened and what did not.[4] See id. at 380, 127 S. Ct. at 1776; see also Morton v. Kirkwood, 707 F.3d 1276, 1284 (11th

---

[4] The correctional officers point to a chemical agent log showing the weight-out and weight-in of Prince's chemical agent canister on the day he sprayed Sears. The log showed that 6.4 grams of spray had been expended. But because the log shows only the weight of one single canister, its existence does not mean that "no reasonable jury could believe" Sears' testimony that Prince used two different chemical spray canisters on him. Cf. Scott, 550 U.S. at 380, 127 S. Ct. at 1776. And it is not clear that the log is accurate, which is another issue for the jury to resolve.

So, too, for the nurse's record of her medical examination of Sears, which listed only some of the injuries he later recounted in his verified complaint and sworn affidavit. A reasonable jury could believe that Sears suffered more injuries than the nurse recorded, or that some of those injuries, such as the swelling and pain in his ribcage, abdomen, and jaw, did not manifest themselves until the next day. In any event, the nurse's report does not establish whether force was applied to Sears after he was handcuffed and compliant. See Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (explaining that the extent of the injury inflicted upon the prisoner is but one factor to consider in an excessive force claim).

Cir. 2013) (affirming denial of summary judgment because, absent a video recording of the incident, defendant's forensic evidence did "not so utterly discredit [plaintiff's] testimony that no reasonable jury could believe it").  At this stage in the proceedings, we must resolve the conflict of evidence in favor of Sears.  The district court erred by weighing the evidence and making its own credibility determinations at the summary judgment stage.  See Anderson, 477 U.S. at 249, 106 S. Ct. at 2510–11.

## C.

Reviewing the record under the correct standard, we conclude that the correctional officers are not entitled to summary judgment.  Given Sears' admitted failure to obey commands and his resistance to being handcuffed, some use of force was necessary to maintain or restore order.  But Sears has sworn that for 16 minutes, including when he was handcuffed, shackled, and lying on the ground, the correctional officers beat him to the point that he was nearly unconscious.  And he swears that Prince sprayed him in the face with a chemical agent for nearly that entire time, using two different chemical agent canisters to do so.

Even if his sworn statements turn out to be exaggerations or false, they are enough to raise a genuine issue of material fact about the amount of force Prince used and whether he applied it "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson, 503 U.S. at 7,

16

112 S. Ct. at 999; see Skrtich, 280 F.3d at 1303 (explaining that the Eighth

Amendment prohibits the use of "gratuitous force against a prisoner who has been

already subdued or . . . incapacitated"). Because Sears' sworn testimony is that

Dexter, Roberts, and Hart witnessed the incident but did not attempt to intervene, a

genuine issue of material fact precluding summary judgment for them also exists.

See Skrtich, 280 F.3d at 1301 ("[A]n officer who is present at the scene and who

fails to take reasonable steps to protect the victim of another officer's use of

excessive force can be held liable for his nonfeasance.").

## IV.

We do not know what the true facts are, but we do know that a genuine

dispute of material fact exists, and it precludes granting summary judgment to the

correctional officers on Sears' § 1983 excessive force and deliberate indifference

by failure to intervene claims. For that reason, we vacate the district court's grant

of summary judgment and remand for further proceedings.

**VACATED and REMANDED.**

MARTIN, Circuit Judge, concurring:

I concur entirely in the well-reasoned opinion of the majority. Mr. Sears's sworn allegations directly contradict the prison officials' version of the incident. Our legal system tasks juries with arriving at the truth from among conflicting accounts. Cases brought by inmates are no exception.

Our Circuit departed from this allocation of factfinding responsibilities in O'Bryant v. Finch, 637 F.3d 1207 (11th Cir. 2011) (per curiam), and it was O'Bryant that led the District Court to deny Mr. Sears a trial. O'Bryant held that no inmate can state a First Amendment retaliation claim based on a disciplinary report if that inmate is found guilty of the infraction after a hearing that satisfies due process. Id. at 1215–16. The majority here rightly holds O'Bryant does not control the outcome for Mr. Sears. Maj. Op. 2, 10–13. I write separately now to point out the flaws in the reasoning of O'Bryant and in hopes that this Court will correct them in an appropriate case.

O'Bryant was wrong to hold that being found guilty of an infraction necessarily precludes a First Amendment retaliation claim. To state a retaliation claim, an inmate must show he (1) engaged in First Amendment protected conduct and (2) suffered an adverse action that would deter a person of ordinary firmness from exercising his First Amendment rights (3) because he engaged in protected conduct. Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). First

18

Amendment retaliation claims turn on whether a prison official took retaliatory action against an inmate because the inmate exercised his First Amendment rights. See id. at 1212.  In other words, the question of whether retaliation occurred looks to why officials took the action they did, not whether they had a factual basis for doing so.

That there is a factual basis for an inmate to be charged with an infraction does not negate the possibility of a retaliatory motive in bringing those charges.  It plainly can be true both that an inmate violated a prison disciplinary rule and that a prison official disciplined the inmate because the inmate engaged in First Amendment-protected conduct.  O'Bryant's ruling that guilt of an infraction precludes a retaliation claim overlooks the point that prison officials might impose discipline in order to retaliate.  In missing this point, O'Bryant undermines the very purpose of retaliation claims: to ensure that prison officials do not chill inmates in the exercise of their First Amendment rights.

O'Bryant's error took root when it transplanted due process principles to the First Amendment's altogether different soil.  O'Bryant read two Supreme Court cases, Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963 (1974), and Superintendent v. Hill, 472 U.S. 445, 105 S. Ct. 2768 (1985), as precluding retaliation claims based on disciplinary charges.  O'Bryant, 637 F.3d at 1213–15.  But neither Wolff nor Hill had anything to do with the First Amendment.  Instead,

19

they addressed the procedures prisons must afford inmates in order to satisfy the due process clause.  See Wolff, 418 U.S. at 555–72, 94 S. Ct. at 2974–82; Hill, 472 U.S. at 454–57, 105 S. Ct. at 2773–75.  But, again, prison officials can comply with due process—even by providing a hearing with the most intricate of procedures—and still have initiated disciplinary proceedings for the purpose of retaliation.  Neither a finding that due process was accorded nor a finding that the disciplinary infraction happened should dispose of an inquiry into why officials took the action they did.

O'Bryant's holding also puts us on the short side of a circuit split.  The Third, Fifth, Sixth, Seventh, and Ninth Circuits have all taken a view contrary to ours.  Maben v. Thelen, 887 F.3d 252, 261–63 (6th Cir. 2018); Watson v. Rozum, 834 F.3d 417, 426 (3d Cir. 2016); Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); Cain v. Lane, 857 F.2d 1139, 1145 (7th Cir. 1988).  But see Requena v. Roberts, 893 F.3d 1195, 1211 (10th Cir. 2018); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994).  To my mind, they have the better of the argument.

Under our Circuit rules, no panel may overrule O'Bryant.  See United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008) (acknowledging that, under our Court's prior panel precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of

abrogation by the Supreme Court or by this court sitting <u>en banc</u>").  Here, the panel

has determined that the rule from <u>O'Bryant</u> does not apply in any event.

Nevertheless, when the appropriate case presents itself, I believe the holding in

<u>O'Bryant</u> merits the attention of the whole Court.

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 24, 2019

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  15-15080-EE
Case Style:  Terry Sears v. Equardo Rivero, et al
District Court Docket No:  8:12-cv-00288-VMC-TGW

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Elora Jackson, EE at (404) 335-6173.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion