UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRY EUGENE SEARS,

    Plaintiff,

v.                        Case No.: 8:12-cv-288-T-33TGW

EDUARDO RIVERO, et al.,

    Defendants.

_____/

**ORDER**

This matter comes before the Court pursuant to Plaintiff Terry Eugene Sears's Motion for New Trial (Doc. # 275), filed on August 28, 2019. Defendants David Prince, Felishia Dexter, Vernia Roberts, and Jeffrey Hart responded on September 9, 2019. (Doc. # 282). For the reasons that follow, the Motion is denied.[1]

---

[1] While the Motion for New Trial was still pending before the Court, Sears filed a Notice of Appeal, appealing the final judgment in this case. (Doc. # 284). This Court retains jurisdiction to rule on Sears's instant Motion, and his Notice of Appeal will become effective upon issuance of this Order. See Fed. R. App. P. 4(a)(4)(B)(i) ("If a party files a notice of appeal after the court announces or enters judgment – but before it disposes of [a motion for new trial under Rule 59] – the notice becomes effective to appeal the judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.").

I. **Background**

In August 2019, this Court conducted a three-day jury trial on Sears's claims, brought pursuant to 42 U.S.C. § 1983, of excessive force and failure to protect against the defendant correctional officers. (Doc. ## 258, 262, 263).

At trial, Sears testified on his own behalf. According to Sears's testimony, on March 18, 2010, while incarcerated at Polk Correctional Institution, Sears refused to be handcuffed by a correctional officer because he felt that he had done nothing wrong. At that point, according to Sears, Prince and two other correctional officers used excessive force against him by hitting him, slamming him to the ground, and using unnecessary amounts of pepper spray on his person. Sears also testified that Dexter, Roberts, and Hart stood by and failed to protect him from the force used by the other correctional officers.

As for the defense, all four Defendants testified to their recollection of the events of that day, and all denied or refuted Sears's version of events. Defendants testified that Sears was yelling, using profanity, and defied a direct order to "cuff up." Prince testified that Sears punched him during the altercation. According to Defendants, the officers then placed Sears on the grass, briefly pepper sprayed him,

and took him to be decontaminated. They denied that excessive force was used or that there was ever a need for an officer to intervene and protect Sears. On August 15, 2019, the jury returned a verdict in favor of Defendants. (Doc. # 269).

On August 28, 2019, Sears filed the instant Motion for New Trial. (Doc. # 275). Defendants have responded (Doc. # 282), and the Motion is ripe for review.

## II. **Legal Standard**

Under Federal Rule of Civil Procedure 59(a), "[t]he court may, on motion, grant a new trial on all or some of the issues — and to any party — as follows: after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).

"A judge should grant a motion for a new trial when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice." Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (internal quotation marks omitted). The Eleventh Circuit has cautioned that "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence." Id. "[W]hen the trial involves simple issues,

highly disputed facts, and there is an absence of 'pernicious occurrences,' trial courts should be considerably less inclined to disturb a jury verdict." <u>Williams v. Valdosta</u>, 689 F.2d 964, 974 (11th Cir. 1982).

Under the Federal Rules of Civil Procedure, "[u]nless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial." Fed. R. Civ. P. 61. Thus, a new trial is warranted only where the error has affected the party's substantial rights. <u>Id.</u>; <u>Knight through Kerr v. Miami-Dade Cty.</u>, 856 F.3d 795, 807 (11th Cir. 2017).

## III. **<u>Analysis</u>**

In his Motion, Sears argues that he was not afforded a fair trial for three reasons. First, he claims that the testimony of lay witness Sam Pacchioli included impermissible expert opinions. (Doc. # 275 at 1, 2-3). Second, Sears submits that he was unfairly prejudiced by evidence admitted at trial regarding his prior disciplinary history and criminal convictions. (<u>Id.</u> at 1, 3-4). Finally, Sears claims that he was unfairly prejudiced by having three uniformed law enforcement officers sitting behind him during trial and having his ankles shackled. (<u>Id.</u> at 1-2, 5-6). The Court will address each claim in turn.

## A. __Sam Pacchioli's Testimony__

As part of the pretrial proceedings, Sears moved to strike all of Defendants' proposed expert witnesses. (Doc. # 210). Concluding that Defendants' disclosure of these witnesses had come too late, the Court granted that motion. (Doc. # 221). Accordingly, no expert witnesses were allowed to testify at Sears's trial.

On the last day of trial, Defendants called Sam Pacchioli as a witness. Pacchioli testified that in March 2010, following many years in corrections and law enforcement, he was employed by the Florida Department of Corrections' (DOC's) Office of the Inspector General (OIG). Pacchioli's duties at OIG included reviewing use-of-force reports submitted to the office.

By the time Pacchioli testified, the use-of-force report related to the March 18, 2010, incident had already been admitted into evidence. (Doc. # 274-1). It included Prince's report, the warden's summary, and the institutional inspector's review. (Id.). At the bottom of the page, there is a space for the Inspector General's review, where the inspector can check "approved" or "disapproved." (Id.). The document reflects that Pacchioli "approved" the use of force, signed it, and dated it on May 27, 2010. (Id.).

Pacchioli testified that, as part of his job duties, he reviewed the reports surrounding the March 18, 2010, incident, including a videotape that was later lost.[2] Defense counsel elicited testimony from Pacchioli that, during his review, he found the use of force to be reasonable and appropriate.

The Court recollects that Sears's counsel objected repeatedly during Pacchioli's testimony to what they viewed as the improper eliciting of expert testimony. This Court warned defense counsel that Pacchioli was not an expert witness and counsel should be careful not to elicit any testimony that would be improper for a lay witness to offer. What's more, directly after defense counsel elicited Pacchioli's statement that he found the use of force to be appropriate, the Court sustained Sears's counsel's objection, struck those questions and answers from the record, and directed the jury to disregard that evidence.

---

[2] The missing videotape was itself the subject of a pretrial motion in limine. (Doc. # 239). The parties entered a written stipulation at trial that the videotape, which would have shown a portion of the March 18, 2010, incident, would have been returned from OIG to Polk Correctional Institution, but the videotape no longer existed.

During cross-examination, Pacchioli admitted that he did not personally witness the March 18, 2010, incident at Polk Correctional Institution.

In his Motion, Sears now argues that Pacchioli, as a lay witness, should not have been permitted to opine on an ultimate issue for the jury's resolution, namely, that the use of force was reasonable and necessary. (Doc. # 275 at 3). Sears also argues that Pacchioli's testimony was the sort of specialized or technical knowledge that was, in truth, an expert opinion. (Id.). Sears further contends that Pacchioli's opinion testimony was improper because he testified to what he inferred from the reports and videotape, as opposed to what he observed. (Id.).

Defendants respond that Pacchioli testified only as a fact witness and did not render any opinion. (Doc. # 282 at 1-2). Defendants state that, pursuant to DOC procedure, Pacchioli's job was to review and then "approve" or "disapprove" use of force incidents. (Id. at 1-2). According to Defendants, Pacchioli "clarified and explained the review process he undertook in order to reach his ultimate conclusion." (Id. at 2). Defendants further argue that, to the extent Pacchioli's testimony could be classified as an opinion by a lay witness, such testimony was properly admitted

under Rule 701. (Id. at 2-3). Finally, Defendants argue that any error was harmless. (Id. at 4).

The parties agree that because the Court disallowed expert witnesses, Pacchioli could only testify as a lay witness. Lay witnesses may offer an opinion only when that opinion is (1) rationally based on the witness's own perception, (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue, and (3) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702, the rule governing testimony by expert witnesses. Fed. R. Evid. 701.

"[T]he opinion of a lay witness on a matter is admissible only if it is based on first-hand knowledge or observation — for example, a witness' opinion that a person with whom he had spoken was drunk, or that a car he observed was traveling in excess of a certain speed." United States v. Marshall, 173 F.3d 1312, 1315 (11th Cir. 1999). Importantly, "[t]he central question . . . is whether the . . . witnesses' testimony [is] based on 'scientific, technical, or other specialized knowledge,' such that it [would be] governed by Rule 702's expert testimony requirements rather than Rule 701's lay opinion standard." United States v. Williams, 865 F.3d 1328, 1341 (11th Cir. 2017).

Typically, courts will presume that a jury followed an instruction to disregard inadmissible evidence presented to it. <u>Greer v. Miller</u>, 483 U.S. 756, 765-66 (1987); <u>see</u> <u>also</u> <u>United States v. Hill</u>, 643 F.3d 807, 829 (11th Cir. 2011) (explaining that courts apply the "strong presumption that jurors are able to compartmentalize evidence by respecting limiting instructions" (internal quotations and ellipsis omitted)).

The Court finds no error here. The portion of Pacchioli's testimony that Sears takes issue with – his conclusion that the force used against Sears was reasonable and appropriate – was stricken from the record and the jury was directed to disregard it, an instruction this Court presumes the jury followed. <u>See</u> <u>Hill</u>, 643 F.3d at 829. The admissible portion of Pacchioli's testimony pertained to his process in reviewing the use-of-force report and testifying that he "approved" the use of force. The jury already knew that Pacchioli "approved" the use of force through admission of the report itself, and Pacchioli's testimony explaining his process for arriving at that conclusion was factual testimony within his own personal knowledge.

Even if there was error, any error was harmless. The Court agrees with Defendants' contention that the trial was

essentially a credibility contest among the witnesses. The jury listened closely to all of the evidence and the parties' competing versions of what transpired on March 18, 2010, and ultimately rendered a verdict in Defendants' favor. The Court concludes that there was substantial evidence to support the jury's verdict, including testimony from Defendants Prince, Roberts, Dexter, and Hart, and that any error in allowing Pacchioli's testimony was harmless. See Fed. R. Civ. P. 61. This claim does not merit a new trial.

## B.  Evidence of Sears's Disciplinary History and Prior Criminal Convictions

Before trial, Sears filed two motions in limine seeking to exclude his prison disciplinary history and his prior criminal convictions from trial. (Doc. ## 214, 215). Sears acknowledged that Defendants could elicit testimony that he was a "felon" or had been convicted of a crime punishable by death or imprisonment exceeding one year but argued that any details beyond that should be excluded. (Doc. # 214). The Court reserved ruling with regard to Sears's disciplinary history. (Doc. # 254). As to Sears's prior criminal convictions, defense counsel represented to the Court before trial that they would limit their inquiry to the fact that Sears had four prior felony convictions. Based on that

representation, the Court held that Defendants could elicit that Sears had four prior felony convictions but could not elicit details as to the nature or circumstances of those convictions. (Doc. # 249). Sears's counsel elicited on direct examination that Sears had four prior felony convictions. To the Court's recollection, no further details about Sears's convictions or sentence came into evidence.

During the trial, Sears testified on cross-examination that he had received two disciplinary reports connected to the March 18, 2010, incident – for disobeying an order and for battery on a correctional officer – and that he was found "guilty" of both. However, Plaintiff's counsel objected strenuously to the admission of the disciplinary reports themselves, and the Court ultimately excluded them, finding that their probative value was substantially outweighed by the danger of unfair prejudice. The Court did admit two exhibits entitled "Request for Administrative Remedy or Appeal" that Sears filed to appeal his disciplinary reports. (Doc. ## 274-6, 274-8).

In his Motion, Sears argues that the evidence of his four prior felony convictions – all of which were more than 20 years old – was irrelevant and substantially more prejudicial than probative. (Doc. # 275 at 3). Sears claims

that eliciting the "details" of his prior convictions was "highly prejudicial" and violated Federal Rule of Evidence 403. (Id. at 4). Sears also takes issue with the fact that the jury heard testimony that Sears was "disciplined" in connection with the March 18, 2010, incident. (Id.). He argues that this testimony was highly prejudicial, improperly substituted the fact-finding function of the jury, and violated Federal Rules of Evidence 401 and 403. (Id. at 3-4).

Defendants respond that the Court has considerable discretion in admitting or excluding evidence under Rule 403 and that Sears's written statements that occurred as a result of receiving disciplinary infractions were admissible as an admission by a party-opponent. (Doc. # 282 at 5). Defendants further argue that the evidence at issue was "duplicative" of other evidence received at trial that Sears was imprisoned due to felony convictions and had disciplinary infractions. (Id. at 6).

The Federal Rules of Evidence favor the admission of relevant evidence. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Courts may exclude relevant evidence, however, "if its

probative value is substantially outweighed" by the danger of, among other things, unfair prejudice. Fed. R. Evid. 403.

Rule 403 demands that a court balance the degrees of probative value that a piece of evidence has against its prejudicial effect. <u>Old Chief v. United States</u>, 519 U.S. 172, 184 (1997). Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility. <u>United States v. Dodds</u>, 347 F.3d 893, 897 (11th Cir. 2003).

Federal Rule of Evidence 609 governs impeachment by evidence of prior criminal convictions. As the parties agree that Sears's relevant convictions are more than 10 years old, Rule 609(b) applies. That rule provides that "[e]vidence of the conviction is admissible only if (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b). "The implicit assumption of Rule 609 is that prior felony convictions have probative value." <u>United States v. Burston</u>, 159 F.3d 1328, 1335 (11th Cir. 1998).

Here, the jury heard evidence that Sears had four prior felony convictions. The Court does not believe this evidence was highly prejudicial, as Sears now argues, in light of the fact that the use-of-force incident at the heart of this case took place while Sears was incarcerated. Thus, the jury knew that Sears had a prior criminal record. The Court specifically directed that any details about Sears's various crimes or the fact that he had a life sentence was to be excluded from evidence. In other words, under the circumstances of this case, the fact that the jury learned that Sears had four prior felony convictions, as opposed to one, had very little prejudicial effect. See Fed. R. Evid. 609(b). It was not error for the Court to admit that testimony.

Turning to the evidence regarding Sears's disciplinary history at the prison, Plaintiff's counsel successfully persuaded this Court to exclude the actual disciplinary records as exhibits. Thus, the only evidence regarding Sears's disciplinary history were Sears's own statements elicited on cross-examination that he had received two disciplinary reports stemming from the March 18, 2010, incident and that he had been found "guilty" of those infractions, and Sears's after-the-fact statements in his

Requests for Administrative Remedy or Appeal that reference those disciplinary proceedings.

The admission of this evidence was not erroneous because its prejudicial effect, if any, did not substantially outweigh its probative value. The jury heard evidence from other witnesses, such as Scoot Voorhees, about Polk Correctional Institution's disciplinary process for inmates, and the fact that Sears engaged in that process with regard to the March 18, 2010, incident was probative information to this case. While the Court agrees that Sears's admission that he was found "guilty" could be prejudicial to him, Sears's counsel also elicited testimony that such disciplinary hearings are not akin to an impartial tribunal – the proceedings are run by the prison and inmates are not afforded counsel. The Court also excluded the disciplinary reports themselves, which included language finding Sears "guilty" of various infractions, as too prejudicial to be admitted. In all, this Court did not err in admitting this limited evidence regarding Sears's disciplinary history. Finally, as to the admission of the Requests for Administrative Remedy or Appeal, these records were admissible as the statement of a party-opponent under Federal Rule of Evidence 801(d)(2), and

their probative value was not substantially outweighed by a danger of unfair prejudice.

Furthermore, if the admission of this evidence was in error, it did not affect Sears's substantial rights in light of the other evidence adduced at trial and, thus, any error was harmless. <u>See</u> Fed. R. Evid. 61. This claim does not merit a new trial.

### C. The Presence of Law Enforcement Officers and the Use of Shackles

Before the jury venire was brought in, Sears's counsel raised an objection to the presence of three law enforcement officers seated behind Sears. This Court overruled that objection, explaining that the officers' presence was for the safety of everyone in the courtroom. Sears's counsel also asked that the jury be excused as Sears was called to the witness stand so they would not see his shackles. The Court granted that request.

Sears now argues that the "constant" presence of the officers and the use of shackles was unfairly prejudicial to him. (Doc. # 275 at 5). Defendants respond that the officers' presence was essential in the courtroom because they were there to guard Sears, "a violent inmate who is serving life in prison," and that the Court took precautions to ensure

that the jury did not see that Sears was shackled. (Doc. # 282 at 6).

The United States Supreme Court has determined that the presence of guards at trial, while not inherently prejudicial, should be evaluated on a case-by-case basis. Holbrook v. Flynn, 475 U.S. 560, 569 (1986) (holding that the presence of four uniformed security guards seated in the front row of the courtroom and directly behind six defendants did not mark the defendants as unmistakably guilty and did not deprive defendants of a fair trial). The Court reasoned that because jurors "may just as easily believe that the officers are there to guard against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence," the officers "need not be interpreted as a sign that [the defendant] is particularly dangerous or culpable." Id.

Civil litigants, like criminal defendants, have a right to a fair trial. But the due process concerns are less weighty than in a criminal trial, and courts are afforded broad discretion in making courtroom security decisions. See Sides v. Cherry, 609 F.3d 576, 581 n.2 (3d Cir. 2010); Lampkins v. Thompson, 337 F.3d 1009, 1016 (8th Cir. 2003).

Here, the Court exercised its discretion in favor of maintaining the security of its courtroom. Further, the jurors knew that Sears was already a convicted felon and Defendants testified that he resisted and got violent on the day in question. Given this, the presence of three uniformed law enforcement officers seated directly behind Sears during trial did not infringe on Sears's right to a fair trial. See Lampkins, 337 F.3d at 1017 (holding that plaintiff failed to demonstrate entitlement to a new trial based on presence of federal marshals in the courtroom); Anthony M. v. Wright, 771 F. App'x 89, 90 (2d Cir. 2019) (affirming district court's allowance of five armed guards from the New York State Department of Corrections and Community Supervision to be present during two of the three days of trial).

For criminal cases, the use of shackles demands close scrutiny. See Holbrook, 475 U.S. at 568-69 (characterizing shackling as an "inherently prejudicial practice that . . . should be permitted only where justified by an essential state interest specific to each trial"); see also Deck v. Missouri, 544 U.S. 622, 632 (2005) (holding that courts should not routinely shackle criminal defendants); Illinois v. Allen, 397 U.S. 337, 344 (1970) ("Not only is it possible that the sight of shackles and gags might have a significant effect on

the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold.").

As far as the Court knows, while there are no Eleventh Circuit cases on the appropriateness of leg shackles or other restraints on parties or witnesses in civil trials, there are cases from other circuits, including Davidson v. Riley, 44 F.3d 1118 (2d Cir. 1995), Lemons v. Skidmore, 985 F.2d 354 (7th Cir. 1993), and Sides v. Cherry, 609 F.3d 576 (3d Cir. 2010). The principle consistently applied in these cases is that the trial court has discretion to order physical restraints on a party or witness when the court has found those restraints to be necessary to maintain safety or security. See Davidson, 44 F.3d at 1122-23; Sides, 609 F.3d at 581. Thus, district courts should balance the prejudice to the prisoner-plaintiff against the need to maintain safety or security. Woods v. Thieret, 5 F.3d 244, 247 (7th Cir. 1993); see also Davidson, 44 F.3d at 1125 (district courts have a "responsibility to determine whether [a prisoner-plaintiff's] due process right not to appear before the jury in shackles . . . [is] outweighed by considerations of security"). "[D]istrict courts have the weighty responsibility of

ensuring the security of their courtrooms, and [we] endorse their broad discretion in determining whether it is necessary to have a prisoner-party . . . physically restrained during a civil trial." Sides, 609 F.3d at 585-86.

When a district court determines that restraints are necessary, it should "impose no greater restraints than are necessary, and [] must take steps to minimize the prejudice resulting from the presence of the restraints." Davidson, 44 F.3d at 1123; see also Holloway v. Alexander, 957 F.2d 529, 530 (8th Cir. 1992) (when physical restraints are necessary, a district court "should take appropriate action to minimize the use of shackles, to cover shackles from the jury's view, and to mitigate any potential prejudice through cautionary instructions").

Here, given Sears's criminal history and evidence that Sears had been disruptive, unruly, and violent in connection with the incident in question, the Court determined that the restraints were necessary and the least restrictive way to address the Court's concerns about courtroom security. But recognizing the risk of undue prejudice to Sears, this Court took pains to ensure that jurors did not see the shackles, including excusing the jury from the courtroom when Sears was called to the stand to testify. All Sears can now offer is

speculation that two jurors who sat behind him during voir dire "could have seen the shackles on Mr. Sears." (Doc. # 275 at 5). Sears cannot even say for certain whether these jurors saw the shackles or what effect it had on them. Without more, the Court declines to find that the use of shackles deprived Sears of due process. This claim does not merit a new trial.

**IV.  Conclusion**

The Court afforded all parties a fair trial. The jury's verdict in favor of Defendants is not against the great weight of the evidence, nor will it result in a miscarriage of justice. See Lipphardt, 267 F.3d at 1186. The purported errors, neither separately nor collectively, rendered the trial fundamentally unfair to Sears. Any error that occurred was harmless, as it did not affect Sears's substantial rights. See Fed. R. Civ. P. 61. The Court, having reviewed the Motion, the response, the record, and its own recollection of the trial, concludes that a new trial is not warranted.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff Terry Eugene Sears's Motion for New Trial (Doc. # 275) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 20th day of September, 2019.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE